**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------- x   Case No. 15-cv-06560-ALC

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR GUARANTY BANK

                                  Plaintiff,

        -against-

THE BANK OF NEW YORK MELLON,

                                  Defendant.

----------------------------------------------- :   Case No. 15-cv-06570-ALC

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR GUARANTY BANK

                                  Plaintiff,

        -against-

U.S. BANK NATIONAL ASSOCIATION,

                                  Defendant.

----------------------------------------------- :   Case No. 15-cv-06574-ALC

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR GUARANTY BANK

                                  Plaintiff,

        -against-

CITIBANK, N.A.,

                                  Defendant.   x

----------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS**

**Table of Contents**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

A.      The Certificates ................................................................................................3

B.      Defendants' Breaches of Duty ................................................................................4

C.      The Guaranty Bank Receivership and Sale of Certificates ...................................7

ARGUMENT .........................................................................................................................7

I.      FDIC-R Adequately Alleges Breach of Contract ................................................7

        A.      FDIC-R Adequately Alleges Pre-Event of Default Breaches of Contract...............7

        B.      FDIC-R Adequately Alleges Post-Event of Default Breaches of Contract ..........12

II.     FDIC-R Adequately Alleges Claims Under the Streit Act ...............................16

        A.      The Streit Act Applies to RMBS .....................................................16

        B.      The Streit Act Imposes Affirmative Duties on Trustees ......................................17

        C.      The Streit Act Provides a Private Right of Action ...............................20

III.    FDIC-R Has Standing to Assert Its Claims .......................................................23

CONCLUSION ....................................................................................................................25

i

## Table of Authorities

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*,
     42 Misc. 3d 1220(A), 986 N.Y.S.2d 864 (Sup. Ct. 2014) .............................................8, 11

*AMBAC Indem. Corp. v. Bankers Trust Co.*,
     573 N.Y.S.2d 204 (Sup. Ct. 1991) ..................................................................................3

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
     464 F.3d 338 (2d Cir. 2006)...........................................................................................10

*Arrowgrass Master Fund Ltd. v. Bank of New York Mellon*,
     No. 651497/2010, 2012 WL 8700416 (N.Y. Sup. Ct. Feb. 24, 2012)..............................15

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)..........................................................................................................8

*Bank of New York Mellon Trust Co. Nat'l Ass'n v. Morgan Stanley Mortg. Capital Inc.*,
     No. 11-cv-0505 (GWG), 2013 WL 3146824 (S.D.N.Y. June 19, 2013)...........................11

*Bank of New York v. Tyco Int'l Grp. SA*,
      545 F. Supp. 2d 312 (S.D.N.Y. 2008)........................................................................13, 14

*Beck v. Manufacturers Hanover Trust Co.*,
     218 A.D.2d 1, 632 N.Y.S.2d 520 (1st Dep't 1995) .........................................................19

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007)...........................................................................................................8

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*,
     No. 14-cv-09401 (KBF), 2016 WL 796848 (S.D.N.Y. Feb. 26, 2016)....................2, 8, 10

*Buchwalter v. Dayton Mgmt. Corp.*,
     139 Misc. 3d 297, 526 N.Y.S.2d 900 (Sup. Ct. 1988)......................................................22

*Commerce Bank v. Bank of New York Mellon*,
     No. 651967/2014, 2015 WL 5770467 (N.Y. Sup. Ct. Oct. 2, 2015) ..........................13, 14

*Consol. Edison, Inc. v. Ne. Utils.*,
     318 F. Supp. 2d 181 (S.D.N.Y. 2004)..............................................................................24

*CPC Int'l Inc. v. McKesson Corp.*,
     70 N.Y.2d 268 (1987) ......................................................................................................21

*Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*,
     No. 12-cv-4205 (AT), 2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013)...............................11

*Excavators Union Local 731 Welfare Fund v. Vanderbilt*,
100 Misc. 2d 1052, 420 N.Y.S.2d 439, (Sup. Ct. 1979).................................................22

*FHFA v. HSBC N. Am. Holdings, Inc.*,
33 F. Supp. 3d 455 (S.D.N.Y. 2014)...........................................................................11

*FHFA v. UBS Ams. Inc.*,
No. 11-cv-5201 (DLC), 2013 WL 3284118 (S.D.N.Y. June 28, 2013) .............................8

*Fixed Income Shares: Series M v. Citibank N.A.*,
No. 14-cv-9373, 2015 WL 5244707 (S.D.N.Y. Sept. 8, 2015) ................................. *passim*

*General Teleradio, Inc. v. Manuti*,
284 A.D. 400, 131 N.Y.S.2d 365 (1st Dep't 1954) ......................................................22

*Groseclose v. Merchants Nat'l Bank & Trust Co. of Syracuse*,
71 Misc.2d 111, 355 N.Y.S.2d 652 (Sup. Ct. 1972)..............................................19, 20, 21

*Harper v. Larchmont Yacht Club*,
38 N.Y.S.2d 505 (Sup. Ct. 1942) ..........................................................................20, 21

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
230 F.3d 549 (2d Cir. 2000)....................................................................................23

*Hogg v. Walker*,
No. Civ. A. 9090, 1993 WL 263504 (Del. Ch. June 30, 1993) ......................................25

*In re Activision Blizzard, Inc. Stockholder Litig.*,
124 A.3d 1025 (Del. Ch. 2015)...........................................................................24, 25

*In re Bankers Trust Co.*,
450 F.3d 121 (2d Cir 2006).....................................................................................13

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012)..........................................................................11

*In re Celera Corp. S'holder Litig.*,
No. Civ. A. 6304-VCP, 2012 WL 1020471 (Del. Ch. Mar. 23, 2012).............................23

*In re Colonial Trust Co.*,
189 Misc. 335, 67 N.Y.S.2d 534 (Sup. Ct. 1946)..........................................................20

*In re Prudence Co. Inc.*
82 F.2d 755 (2d Cir 1936).....................................................................................17

*In re Sunstates Corp. S'holder Litig.*,
No. Civ. A. 13284, 2001 WL 432447 (Del. Ch. Apr. 18, 2001) ......................................23

*Knights of Columbus v. Bank of New York Mellon*,
No. 651443/2011, 2015 WL 4501196 (N.Y. Sup. Ct. July 10, 2015) ........................13, 14

*Magten Asset Mgmt. Corp. v. Bank of New York*,
15 Misc. 3d 1132(A), 841 N.Y.S.2d 219 (Sup. Ct. May 8, 2007) ..............................15, 16

*MASTR Asset-Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. Corp.*,
No. 11-cv-2542, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) ..........................................11

*Meinhard v. Salmon*,
249 N.Y. 458 (1928) .............................................................................................................5

*Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*,
No. 12-cv-7581 (HB), 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013) ..............................15

*Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*,
No. 12-cv-7581 (JGK), 2015 WL 6454844 (S.D.N.Y. Oct. 26, 2015) .............................15

*Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*,
No. 00-cv-8613 (SAS), 2002 WL 818082 (S.D.N.Y. Apr. 30, 2002) ........................10, 11

*Nacional Financiera SNC v. Bankers Trustee Co. Ltd.*,
No. 121131/98, 2000 WL 36564710 (Sup. Ct. Nov. 17, 2000)...................................15, 16

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
No. 14-cv-9928, 2016 WL 796850 (S.D.N.Y. Feb. 25, 2016) .........................................20

*Negrin v. Norwest Mortg., Inc.*,
263 A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999)...................................................21, 22

*Oklahoma Police Pension & Ret. System v. U.S. Bank Nat'l Ass'n*,
291 F.R.D. 47 (S.D.N.Y. 2013) .................................................................................2, 13

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007).................................................................................................8

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
No. 14-cv-10104, 2015 WL 57100645 (S.D.N.Y. Sept. 29, 2015) ........................... *passim*

*Policemen's Annuity & Benefit Fund v. Bank of Am., N.A.*,
907 F. Supp. 2d 536 (S.D.N.Y. 2012)...................................................................6, 10, 11

*Policemen's Annuity & Benefit Fund v. Bank of Am., N.A.*,
943 F. Supp. 2d 428 (S.D.N.Y. 2013)......................................................................2, 8, 11

*Prudence Realization Corp. v. Atwell*,
264 A.D. 546, 35 N.Y.S.2d 1001 (1st Dep't 1942) .........................................................17

*Racepoint Partners LLC v. JPMorgan Chase Bank, N.A.*,
  14 N.Y.3d 419 (2010) .........................................................................6

*Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of New York Mellon*,
  914 F. Supp. 2d 422 (S.D.N.Y. 2012).................................................2, 12, 13

*Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of New York Mellon*,
  775 F.3d 154 (2d Cir. 2014).................................................................9, 10, 25

*Rosner v. Bank of China*,
  349 F. App'x 637 (2d Cir. 2009) .........................................................8

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
  No. 14-cv-4394, 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) ...................*passim*

*Royal Park Invs. SA/NV v. HSBC Bank, USA, Nat'l Ass'n*,
  109 F. Supp. 3d 587 (S.D.N.Y. 2015).......................................................*passim*

*Schultz v. Ginsburg*,
  95 A.2d 661, (Del. 2009) .....................................................................23, 25

*Semi-Tech Litig., LLC v. Bankers Trust Co.*,
  272 F. Supp. 2d 319 (S.D.N.Y. 2003).......................................................23

*Sheehy v. Big Flats Cmty. Day*,
  73 N.Y.2d 629 (1989) ..........................................................................21

*Sterling Fed. Bank F.S.B. v. DLJ Mortg. Capital Inc.*,
  No. 09-cv-6904, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) ........................14

*U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*,
  No. 13-cv-6989 (GBD), 2014 WL 7714382 (S.D.N.Y. Nov. 14, 2014) ..................11

*Viacom Int'l v. YouTube, Inc.*,
  676 F.3d 19 (2d Cir. 2012).....................................................................10

*VNB Realty Inc. v. U.S. Bank, N.A.*,
  No. 13-cv-04743 (WJM), 2014 WL 1628441 (D.N.J. Apr. 23, 2014) ................6

## **Other Authorities**

6 Del. Code § 8-302 ......................................................................... *passim*

Black's Law Dictionary (10th Ed.).........................................................17

Fed. R. Civ. P. 8.................................................................................2

N.Y. Gen. Bus. Law § 259-g ................................................................21

N.Y. Gen. Bus. Law § 352-1 ...........................................................................................21

N.Y. Gen. Bus. Law § 352-c...........................................................................................21

N.Y. Gen. Bus. Law § 353...............................................................................................21

N.Y. Gen. Bus. Law § 354...............................................................................................21

N.Y. Gen. Oblig. Law § 13-107 ......................................................................................24

N.Y. Real Prop. Law § 124.........................................................................................18, 22

N.Y. Real Prop. Law § 125..............................................................................................16

N.Y. Real Prop. Law § 126.....................................................................................17, 18, 19

N.Y. Real Prop. Law § 130-h .....................................................................................18, 22

N.Y. U.C.C. § 8-302 .......................................................................................................24

Plaintiff Federal Deposit Insurance Corporation as Receiver for Guaranty Bank ("Plaintiff" or "FDIC-R") respectfully submits this Memorandum of Law in Opposition to the Joint Motion to Dismiss ("Motion") by Defendants The Bank of New York Mellon ("BNYM"), U.S. Bank National Association ("US Bank"), and Citibank, N.A. ("Citi," and collectively, "Trustees" or "Defendants"), along with the Declaration of Ryan A. Kane dated March 8, 2016 ("Kane Decl."), and accompanying exhibits.

## PRELIMINARY STATEMENT

Defendants agreed to serve as trustees for the at-issue residential mortgage-backed securities ("RMBS"), obligating themselves to perform acts integral to protecting the rights of investors such as FDIC-R. Defendants' duties go far beyond the "ministerial and administrative tasks" the Trustees now claim as their sole responsibilities. Motion at 1. Those duties include, among other things, (i) taking possession of complete mortgage files to ensure that the RMBS were actually are mortgage-backed; (ii) providing notice of breaches of representations and warranties as to the loans underlying the RMBS; and (iii) acting prudently to protect the interest of investors upon the occurrence of Events of Default under the governing agreements of the RMBS trusts. Rather than meet their obligations, Defendants, shirked their duties and stood by idly for years while defective loans filled the RMBS trusts and loan servicers failed to properly service the loans.

***FDIC-R has adequately plead breach of contract***. First, the Motion does not challenge that FDIC-R adequately plead Defendants' failure to take possession of complete mortgage files, which constituted both breaches of contract and left defaults uncured giving rise to Events of Default under the governing agreements that triggered Defendants' prudent person duties.

Second, with respect to the breach claims that Defendants do challenge, courts in this District have repeatedly rejected the Trustees' arguments. Decisions by Judge Caproni, Judge Forrest, Judge Furman, Judge Koeltl, Judge Nathan, Judge Pauley, Judge Scheindlin and Judge Woods have all sustained investor claims against RMBS trustees based on allegations virtually identical to those of FDIC-R ("SDNY Trustee Decisions"), and have all been ignored by Defendants in the Motion.[1]

According to Defendants, FDIC-R's claims are governed by a heightened pleading standard requiring FDIC-R to allege Defendants' notice or knowledge of specific breaches and defaults. However, as the SDNY Trustee Decisions recognized, the proper standard under Fed. R. Civ. P. 8 is whether FDIC-R's allegations "raise a reasonable expectation that discovery will reveal evidence proving [its] claim." *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 602 (S.D.N.Y. 2015) ("*Royal Park v. HSBC*"). As Judge Forrest explained: "On this motion to dismiss, the question for the Court is not whether in fact the Trustees had actual notice—that is a factual determination left for trial. Instead, the question under the Rule 8 pleading standard—as elaborated by *Twombly* and *Iqbal*—is whether plaintiffs have pled plausible facts supporting allegations of actual notice." *Policemen's Annuity & Benefit. Fund v. Bank of Am., N.A.*, 943 F. Supp. 2d 428, 442-43 (S.D.N.Y. 2013) ("*Policemen's/BofA II*").

---

[1] *See* Kane Decl. Ex. 1 (*Royal Park Invs. SA/NV v. Bank of New York Mellon*, No. 14-cv-6502 (S.D.N.Y. Mar. 2, 2016) (J. Woods) (ECF No. 80) ("*Royal Park v. BNYM*")); *Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n,* No. 14-cv-09401, 2016 WL 796848 (S.D.N.Y. Feb. 26, 2016) (J. Forrest); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-4394, 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) (J. Nathan) ("*Royal Park v. Deutsche Bank*"); *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015) (J. Scheindlin); *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-cv-10104, 2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015) (J. Caproni) ("*Phoenix Light v. BNYM*"); *Fixed Income Shares: Series M v. Citibank N.A.*, No. 14-cv-9373, 2015 WL 5244707 (S.D.N.Y. Sept. 8, 2015) (J. Furman); *Oklahoma Police Pension & Ret. System v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47 (S.D.N.Y. 2013) (J. Koeltl); *Policemen's Annuity & Benefit. Fund v. Bank of Am., N.A.*, 943 F. Supp. 2d 428 (S.D.N.Y. 2013) (J. Forrest); *Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of New York Mellon*, 914 F. Supp. 2d 422 (S.D.N.Y. 2012) (J. Pauley) ("*Policemen's v. BNYM*").

As shown below, FDIC-R has unquestionably alleged plausible facts, including widespread breaches by the originators and servicers of loans underlying the RMBS and even loan-level data as to defects in those loans, showing Defendants' knowledge and notice of breaches and defaults under the governing agreements of the RMBS trusts.

**_FDIC-R has adequately plead violation of the Streit Act_**. Defendants seek dismissal of FDIC-R's Streit Act claims on the basis that the Act only requires the Trustees to paste certain provisions into the RMBS trusts' agreements. This assertion ignores an unbroken line of New York state cases finding that the Streit Act imposes affirmative duties on trustees. "[The Streit Act] and related provisions were enacted to correct abuses in public investments in real estate mortgages covered by trust indentures and to bar the parties to a trust indenture from allowing a trustee to avoid his duty to protect the bondholders once a default occurs." *AMBAC Indem. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 207 (Sup. Ct. 1991). Further, the courts consistently recognize a private right of action under the Streit Act, including most recently Judge Scheindlin in *Royal Park v. HSBC*, 109 F. Supp. 3d at 610-12.

**_FDIC-R has standing to bring its claims_**. Under § 8-302 of the Delaware UCC, FDIC-R's claims are personal in nature and therefore claims retained by FDIC-R notwithstanding sale of the RMBS to a resecuritization trust. Defendants fail to cite any cases holding that an investor's breach of contract and Streit Act claims for personal damages are not personal claims retained by a transferor under § 8-302. There are none.

## FACTUAL BACKGROUND

### A.    The Certificates

FDIC-R brings actions arising out of BNYM's role as trustee for twelve RMBS trusts, US Bank's role as trustee for two RMBS trusts, and Citi's role as trustee for one RMBS trust

(collectively, "Trusts"). The Trusts issued RMBS certificates that were sold to investors. BNY Compl. ¶ 3; US Bank Compl. ¶ 3; Citi Compl. ¶ 4.[2] Guaranty Bank purchased over $2.5 billion of certificates issued by the Trusts ("Certificates"). BNY Compl. ¶ 4; US Bank Compl. ¶ 4; Citi Compl. ¶ 4. The Trusts' assets consist of residential mortgage loans, and the Certificates represent interests in their cash flows. BNY Compl. ¶ 5; US Bank Compl. ¶ 5; Citi Compl. ¶ 5. Therefore, it is critical that the mortgage loans are properly conveyed to the Trusts, that the loans comply with the representations and warranties of their sellers, and that loan servicers properly service the loans.

**B.    Defendants' Breaches of Duty**

Defendants had the crucial role of protecting the Trusts' assets. Certificateholders, such as FDIC-R, did not receive any loan files and had no means to determine if those loans complied with their representations and warranties and had complete files. BNY Compl. ¶ 6; US Bank Compl. ¶ 6; Citi Compl. ¶ 6. Instead, Certificateholders relied upon Defendants to protect certificateholders' contractual and legal rights. *Id*. Defendants' duties as trustees are set forth in governing agreements known as Pooling and Servicing Agreements ("PSAs"), and in applicable state and federal laws. BNY Compl. ¶ 7; US Bank Compl. ¶ 7; Citi Compl. ¶ 7.

Prior to an Event of Default, under a PSA, Defendants had the duty to (i) take possession of complete loan files; (ii) provide notice of breaches of  loan representations and warranties, (iii) enforce loan seller obligations to repurchase defective loans; and (iv) for BNYM, provide accurate remittance reports. BNY Compl. ¶¶ 11, 35, 39-55; US Bank Compl. ¶¶ 11, 35, 39-48; Citi Compl. ¶¶ 11, 34, 38-47. Defendants failed to fulfill all of these duties. BNY Compl. ¶¶ 63, 71-75, 104-06, 120-22; US Bank Compl. ¶¶ 55, 60-64, 91-93; Citi Compl. ¶¶ 53, 57-60, 84-86.

---

[2] BNY Compl. ¶ _, US Bank Compl. ¶ _, and Citi Compl. ¶ _ refers to the Complaints in these actions.

After an Event of Default, Defendants had an ironclad duty to "exercise such of the rights and powers vested in it by [the PSAs], and . . . use the same degree of care and skill in their exercise as a prudent person would exercise under the circumstances in the conduct of such person's own affairs." BNY Compl. ¶ 48; US Bank Compl. ¶ 46; Citi Compl. ¶ 45. After an Event of Default, any limitations on Defendants' duties vanish and Defendants become traditional trustees. *Royal Park v. HSBC*, 109 F. Supp. 3d at 597 ("Following a contractually defined Event of Default, the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture" (internal quotations omitted)). As famously articulated by Judge Benjamin Cardozo, such a trustee "is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior . . . ." *Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928).

Under the eight Countrywide-issued Trusts, Events of Default occurred within one year of the creation of each Trust as a result of uncured incomplete mortgage files. BNY Compl. ¶¶ 109, 113. Under all of the Trusts, the existence of incomplete mortgage files likewise gave rise to Events of Default because the servicers' failure to act prudently when presented with defaulted loans with missing documents constituted servicer breaches of the PSAs. BNY Compl. ¶¶ 108-14; US Bank Compl. ¶¶ 95-96; Citi Compl. ¶¶ 88-89. Defendants indisputably knew of these Events of Default because Defendants (or their agents) provided notice of missing documents as to loans in each Trust. BNY Compl. ¶ 38; US Bank Compl. ¶ 38; Citi Compl. ¶ 37.

Moreover, under the PSAs, material loan servicer breaches that remain uncured after notice also are Events of Default. BNY Compl. ¶¶ 43-44; US Bank Compl. ¶ 52; Citi Compl. ¶ 50. Because they were obligated to provide notice of servicer breaches that trigger Events of

5

Default, BNY Compl. ¶¶ 42-43; US Bank Compl. ¶¶ 40-41; Citi Compl. ¶¶ 39-40, the Trustees cannot claim an absence of an Event of Default based on their own failure to give notice of such servicer breaches. *Fixed Income*, 2015 WL 5244707, at *11 (An RMBS trustee "may not excuse its failure to perform the additional duties required of it after an Event of Default by pointing to its own failure to give notice."). Multiple Events of Default arising from servicer breaches occurred under the PSAs, including Events of Default triggered by the servicers' failure to provide notice of violations of loan representations and warranties, and the servicers' delivery of false annual compliance certifications. BNY Compl. ¶¶ 11, 42, 116-17; US Bank Compl. ¶¶ 11, 40, 97-98; Citi Compl. ¶¶ 11, 39, 91-92. After Events of Default, the Trustees failed to act prudently to enforce repurchase obligations or to address servicing failures, including excessive charges for default services that sharply diminished the Trusts' assets. BNY Compl. ¶¶ 104-29; US Bank Compl. ¶¶ 91-104; Citi Compl. ¶¶ 84-100.

Defendants' claims that they have no pre-Event of Default duty to investigate (Motion at 6-7) is essentially irrelevant, since FDIC-R does not claim that the Trustees were required to investigate everything in a business-as-usual environment. Rather, having notice of numerous PSA breaches and defaults, the Trustees were required to act as a prudent person. A limitation on a duty to investigate is not a license to ignore. As Judge Forrest explained:

> [T]o accept that the Trustee was unaware of those reports and investigations would require the Court to "find that the responsible officers of Defendants had been living under a rock." If the Trustee was indeed "living under a rock," . . . it had no right to do so given its role and responsibilities.

*Policemen's Annuity & Benefit Fund v. Bank of Am., N.A.*, 907 F. Supp. 2d 536, 553-54 (S.D.N.Y. 2012) ("*Policemen's/BofA I*") (internal citations omitted).[3]

---

[3] Defendants cite two cases for the proposition that a trustee has no duty to investigate. *VNB Realty, Inc. v. U.S. Bank, N.A.*, No. 13-cv-04743, 2014 WL 1628441 (D.N.J. Apr. 23, 2014); *Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*, 14 N.Y.3d 419 (2010). Both are inapposite because in each the

C.     **The Guaranty Bank Receivership and Sale of Certificates**

FDIC-R became receiver for Guaranty Bank on August 21, 2009. *See, e.g.*, BNY Compl. ¶ 20. By March 2010, the Certificates were trading at between 13.3% and 41.4% of face value. BNY Compl. ¶ 132; US Bank Compl. ¶ 107; Citi Compl. ¶ 103. On March 11, 2010, FDIC-R sold the Certificates as part of a resecuritization known as SSGN 2010-S1 ("Resecuritization"), suffering over half a billion dollars in losses. BNY Compl. ¶ 133; US Bank Compl. ¶ 108; Citi Compl. ¶ 104. The sale was made pursuant to a trust agreement ("Resecuritization Trust Agreement") containing a Delaware choice of law clause. *Id*. Section 3.01 of the agreement provides that the Seller (FDIC-R) conveys "all its right, title and interest in and to the Underlying Securities, including all interest and principal due with respect to the Underlying Securities." *See, e.g.*, BNY Compl. ¶ 134. As set forth below pursuant to § 8-302 of the Delaware UCC, 6 Del. Code § 8-302, this conveyance did not include a transfer of FDIC-R's claims that accrued prior to the Resecuritization.

## ARGUMENT

I.     **FDIC-R Adequately Alleges Breach of Contract**

A.     **FDIC-R Adequately Alleges Pre-Event of Default Breaches of Contract**

Defendants do not challenge that FDIC-R adequately alleges that they breached their contractual duties to take possession of complete mortgage files.  *See* BNY Compl. ¶¶ 34-44, 63-70; US Bank Compl. ¶¶ 34-45, 55-59; Citi Compl. ¶¶ 33-38, 53-56. FDIC-R's breach of contract claims should go forward on that basis alone. Defendant BNYM likewise does not challenge that FDIC-R adequately alleges that BNYM breached its duty to provide accurate remittance reports to FDIC-R. *See* BNY Compl. ¶¶ 51-55, 120-22.

---

plaintiffs did not allege that the trustee had a duty to provide notice "upon discovery" of breaches. The issue of whether a trustee could turn a blind eye to notices of breaches was not before either court.

Defendants only challenge the sufficiency of FDIC-R's pre-Event of Default claims concerning the Trustees' duties to provide notice of representation and warranty violations, and to enforce seller obligations to repurchase defective loans (*see* Motion at 11-14), but the courts of this District repeatedly reject Defendants' arguments as to their duties.[4] The SDNY Trustee Decisions make clear that, at the pleading stage, an RMBS investor like FDIC-R need only allege facts sufficient to "raise a plausible inference that there were in fact breaches of the Sellers' representations and warranties with respect to the loans included in the trusts at issue." *Royal Park v. HSBC*, 109 F. Supp. 3d at 602. Under this standard, allegations of "the 'routine abandonment of [loan seller] underwriting guidelines; the routine fabrication of borrower and loan information; massive breaches of their [representation and warranties]; and the engagement in predatory and abusive lending" adequately state claims against an RMBS trustee. *Id*.[5] "At the pleading stage, plaintiffs cannot be required to identify breaches of representations and warranties with respect to the individual loans in the specific trusts—such information is, at this stage, uniquely in the possession of defendants." *Policemen's v. BofA II*, 943 F. Supp. 2d at 442-43; *see also Royal Park v. HSBC*, 109 F. Supp. 3d at 602 (same).[6]

---

[4] Pursuant to Fed. R. Civ. P. 8, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Only a statement of facts so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under [Rule] 12(b)(6)." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007).

[5] *See, e.g.*, *Policemen's/BofA II*, 943 F. Supp. 2d at 442 (allegations of RMBS "deteriorating credit quality," increasing losses, and reports of generally deficient underwriting practices are sufficient to plausibly allege breaches of representations and warranties for the at-issue loans); *Blackrock*, 2016 WL 796848, at *16 ("[A]t the pleading stage. . . [Plaintiff] may rely on broad knowledge as to what was known, including an inference as to the low likelihood that the pool of loans here was different [to those found with a large amount of defective loans], to pass the knowledge requirement for pleading.").

[6] *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 42 Misc. 3d 1220(A), at *5-6, 986 N.Y.S.2d 864 (Sup. Ct. 2014) is not on point. The decision merely held that knowledge of reported misconduct was insufficient to show scienter, which is not an element of any of FDIC-R's claims. *Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) (distinguished on same basis). *FHFA v. UBS Ams. Inc.* also

8

Similarly to plaintiffs in the SDNY Trustee Decision, FDIC-R has plead extensive facts that the Trustees knew or had notice of breaches pertaining to the Trusts, including:

- High delinquency rates, cumulative loan losses, and rating downgrades. BNY Compl. ¶¶ 90-92; US Bank Compl. ¶¶ 78-80; Citi Compl. ¶¶ 71-73.

- Numerous foreclosure actions in Defendants' names revealing that large numbers of defaulted loans originated by the same parties that originated loans in the Trusts were improperly extended to borrowers lacking the ability to repay. BNY Compl. ¶¶ 69-70, 78-80; US Bank Compl. ¶¶ 59, 67-69; Citi Compl. ¶¶ 63-65.

- Lawsuits against the same parties that originated and securitized the loans in the Trusts based on extraordinarily high rates of material underwriting violations uncovered through a review of loan files in trusts for which Defendants were trustees. BNY Compl. ¶¶ 81-88; US Bank Compl. ¶¶ 73-77; Citi Compl. ¶¶ 66-70.

- Defendants' own lawsuits against the same parties that originated and securitized the loans here alleging widespread misconduct and high breach rates for loans originated during the same period as the loans in the Trusts. US Bank Compl. ¶¶ 70-71.

- Public reports, government investigations, and lawsuits evidencing that the same engaged in pervasive breaches of underwriting and securitization standards. BNY Compl. ¶¶ 95-97, 127; US Bank Compl. ¶¶ 82-84, 102; Citi Compl. ¶ 75-77, 98.

As Judge Furman has explained, "it would be implausible to assume that somehow all of the mortgage loans underlying the [Trusts] miraculously avoided the pervasive practices of the industry at the time." *Fixed Income*, 2015 WL 5244707, at *10 (internal quotations omitted). FDIC-R has demonstrated that no such miracles occurred here by citing empirical data showing high rates of breaches of mortgage loan representations and warranties as to loans in the Trusts. BNY Compl. ¶¶ 101-02; US Bank Compl. ¶¶ 88-89; Citi Compl. ¶¶ 81-82.

Ignoring the SDNY Trustee Decisions, Defendants contend that breaches must be plead "loan-by-loan and trust-by-trust," citing *Retirement Bd. of the Policemen v. Bank of New York*

---

is irrelevant as the ruling involved a mere discovery dispute, not the pleading requirements of Rule 8. No. 11-cv-5201 (DLC), 2013 WL 3284118, at *18-19 (S.D.N.Y. June 28, 2013).

*Melon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*Policemen's/BNY Appeal*"). Motion at 15.[7] However,

that decision has nothing to do with allegations at the pleading stage. As Judge Scheindlin ruled

in *Royal Park v. HSBC*:

> [Trustees] attempt[] to use [*Policemen's/BNY Appeal*] to import a heightened pleading requirement into the RMBS context, but nothing in this decision implicates plaintiffs' burden *at the pleading stage*. . . Thus, the applicable standard is whether plaintiffs have pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

109 F. Supp. 3d at 601; *Phoenix Light v BNYM*, 2015 WL 5710645, at *4; *Fixed Income*, 2015

WL 5244707, at *12. "In other words, the non-loan-specific pleading passes muster at this

stage." *Blackrock*, 2016 WL 796848, at *15.

Defendants also rely on *Viacom Int'l v. YouTube, Inc.*, 676 F.3d 19, 30 (2d Cir. 2012), a

copyright infringement case, to contend that FDIC-R must plead "actual loan-specific

knowledge." Motion at 16. *YouTube* is factually inapposite and also procedurally off-base, as it

concerned proof of knowledge at the summary judgment stage, and resulted in a remand for

further fact finding. *Id*. at 41.

While Plaintiff's allegations more than plausibly raise an inference as to Defendants'

knowledge or notice, Defendants misconstrue the PSAs' provision that Trustees shall provide

notice of representation and warranty violations "upon discovery" of such violations. BNY

Compl. ¶ 42; US Bank Compl. ¶ 40; Citi Compl. ¶ 39. As courts interpreting this language have

held, a "party 'discovers' a breach when it knows or should know that the breach has occurred."

*Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*, No. 00-cv-8613

(SAS), 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002); *see Policemen's/BofA I*, 907 F. Supp.

---

[7] *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) is not on point as it neither involved RMBS nor provided guidance regarding pleading or proving claims against RMBS trustees. The decision merely held that a plaintiff alleging breach of fiduciary duty against a fund advisor is required to allege some facts suggesting a breach, a standard FDIC-R readily meets. *Id.*

2d at 553. Once a party obtains information indicating a breach, it must "'pick up the scent and nose to the source. If the quest confirms this suspicion, then he must make [the] decision [to raise the claim] with reasonable dispatch.'" *Morgan Guar. Trust Co.*, 2002 WL 818082, at *5; *see Bank of New York Mellon Trust Co. Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*, No. 11-cv-0505 (GWG), 2013 WL 3146824, at *19 (S.D.N.Y. June 19, 2013); *MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. Corp.*, No. 11-cv-2542, 2012 WL 4511065, at *7 (D. Minn. Oct. 1, 2012).[8]

None of Defendants other cited cases support their argument that FDIC-R does not properly allege knowledge. *U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.* is not on point. The decision merely held that, in order to force repurchase of a loan, an RMBS trustee was required to identify the loan and allege that the trustee had provided a notice of repurchase or that the defendant seller was otherwise aware of the breach. No. 13-cv-6989 (GBD), 2014 WL 7714382, at *6 (S.D.N.Y. Nov. 14, 2014). The case did not involve claims against a trustee for a general failure to enforce seller repurchase obligations,[9] and it is certainly no answer to the "chorus" of decisions ruling that allegations similar to those here are sufficient to establish knowledge or notice of breaches. *See Phoenix Light v. BNYM,* 2015 WL 5710645, at *4.[10]

---

[8] In other actions, RMBS trustees allege that *Policemen's/BofA II* overturns *Policemen's/BofA I* holdings on the meaning of "discovery" in the PSAs. Nothing in *Policeman's/BofA II*, which is a decision on a motion to dismiss an amended complaint not a reconsideration motion, overturns *Policemen's/BofA I.*

[9] Judge Daniels made a similar distinction in connection with a motion to dismiss in another RMBS trustee action against BNYM. Kane Decl. Ex. 2 at 73.

[10] Defendants' remaining off-point authority includes: (i) statute of limitations summary judgment decisions in which defendant failed to present evidence sufficient to show investor's awareness of misrepresentations, *FHFA v. HSBC N. Am. Holdings, Inc.*, 33 F. Supp. 3d 455, 464 (S.D.N.Y. 2014); *UBS Ams., Inc.*, 2013 WL 3284118, at *15; (ii) decisions refusing to dismiss claims as untimely where media reports merely raised red flags and plaintiff investors lacked the ability to sufficiently investigate, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 763-65 (S.D.N.Y. 2012); *Allstate*, 42 Misc. 3d 1220(A) at *4-6; and (iii) a decision involving the heightened pleading standard for fraud, not applicable here, *Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*, No. 12-cv-4025 (AT), 2013 WL 6667601, at *13 (S.D.N.Y. Dec. 17, 2013).

Finally, BNYM claims that for eight Countrywide-issued Trusts, the PSAs did not require BNYM to enforce repurchase obligations. Motion at 11-12. This is incorrect. Those PSAs grant BNYM the right to enforce repurchase obligations, *see* Decl. of Tera M. Heintz in Support of Joint Motion to Dismiss ("Heintz Decl.") Ex. 1 (CWALT PSA §§ 2.02 (e), 2.03(c)), and ***require*** BNYM to "exercise the rights referred to above [including rights under Sections 2.02(e) and 2.03(c)] for the benefit of all present and future Holders of the Certificates . . . to the end that the interests of the Holders of the Certificates may be adequately and effectively protected," *id.* at § 2.06. The court in *Royal Park v. Deutsche Bank* held that nearly identical language creates an obligation on a trustee to enforce repurchase obligations. 2016 WL 439020, at *4.

### B.    FDIC-R Adequately Alleges Post-Event of Default Breaches of Contract

Defendants do not claim that they exercised remedies prudently after Events of Default. Rather, Defendants contend that FDIC-R failed to allege that Defendants had written notice or knowledge of any Event of Default. Motion at 19. In this, Defendants again seek to require FDIC-R to prove its case at the pleading stage. "[A]t the motion to dismiss stage . . . Plaintiffs [need not] allege facts that inexorably lead to the conclusion that [Trustee] had actual knowledge that the Servicers were in breach . . . it is sufficient for Plaintiffs to allege facts that plausibly suggest a likelihood that [Trustee] had the requisite knowledge." *Phoenix Light v. BNYM*, 2015 WL 5710645, at *4-5.[11]

---

[11] *See also Royal Park v. Deutsche Bank*, 2016 WL 439020, at *8 (plaintiff adequately plead trustee's knowledge of servicer defaults based on allegations of "widespread RMBS abuse"); *Fixed Income,* 2015 WL 5244707, at *12 (plaintiff "must demonstrate only that it is plausible that Citibank knew that servicers had breached their obligations to particular trusts"); *Policemen's v. BNYM*, 914 F. Supp. 2d at 431 (allegations that servicer failed to provide mortgage files, cure defects in the loan files or replace the defective loans sufficiently plead Events of Default); *Royal Park v. HSBC*, 109 F. Supp. 3d at 604-05 (plaintiffs have adequately plead Events of Default by alleging receipt of written notice from monoline insurers and certificateholders regarding servicer violations); Kane Decl. Ex. 1 (*Royal Park Invs. SA/NV v. Bank of New York Mellon*) at 11 ("Royal Park need only plead facts sufficient to show that it is plausible that BNYM knew of servicer events of default.").

As an initial matter, the Trustees did have written notice of defaults pertaining to incomplete mortgage files since the Trustees or their custodians themselves provided such notice through their delivery of document exception reports. BNY Compl. ¶¶ 63-68; US Bank Compl. ¶¶ 55-58; Citi Compl. ¶¶ 53-56. Indeed, Defendants were able to report precisely how many incomplete mortgage files existed in their respective trusts as, for example, BNYM informed a court in a different proceeding that precisely 117,899 loans in various of its trusts had incomplete mortgage files. BNYM Compl. ¶ 67. Moreover, FDIC-R readily meets the level of pleading that the SDNY Trustee Decisions found sufficient to plead document delivery Events of Defaults. *See, e.g., Policemen's v. BNYM*, 914 F.Supp.2d at 431(failure to provide complete mortgage files constituted Events of Default); *Royal Park v. HSBC*, 109 F. Supp. 3d at 607-08; *Phoenix Light v. BNYM*, 2015 WL 5710645, at *4-6.

Further, FDIC-R does not have to show written notice of a default at the pleading stage (or any stage) to establish Events of Default because an RMBS trustee "may not excuse its failure to perform the additional duties required of it after an Event of Default by pointing to its own failure to give notice; that is, [the RMBS trustee] 'is not permitted to take advantage of its own wrong.'" *Fixed Income*, 2015 WL 5244707, at *11 (quoting *In re Bankers Trust Co.*, 450 F.3d 121, 129 (2d Cir. 2006) and citing *Oklahoma Police*, 291 F.R.D. at 70-71). "[I]t has been established for over a century that a party may not insist upon performance of a condition precedent when its non-performance has been caused by the party [i]tself." *Bank of New York v. Tyco Int'l Grp., S.A.*, 545 F. Supp. 2d 312, 324 n.81 (S.D.N.Y. 2008) (citation and internal quotations omitted). There is no basis to upend a century of precedent in this case.[12]

---

[12] Defendants rely heavily upon *Knights of Columbus v. Bank of New York Mellon*, No. 651442/2011, 2015 WL 4501196, at *3 (N.Y. Sup. Ct. July 10, 2015) (trial order), and *Commerce Bank v. Bank of New York Mellon*, No. 651967/2014, 2015 WL 5770467, at *3 (N.Y. Sup. Ct. Oct. 2, 2015) (trial order). These rulings are not persuasive because they did not consider the long line of cases holding that a party to a

FDIC-R more than adequately pleads the Trustees' knowledge of servicer defaults sufficient to plead the existence of Events of Default under Rule 8. First, FDIC-R alleges in detail that the Trustees were aware that the servicers breached their obligations to cause the responsible parties to repurchase or substitute loans for those with incomplete mortgage files. BNY Compl. ¶¶ 104-19; US Bank Compl. ¶¶ 91-98; Citi Compl. ¶¶ 84-94.

Second, FDIC-R adequately pleads servicer breaches resulting from false annual reports certifying compliance with servicing obligations. BNY Compl. ¶¶ 116-17; US Bank Compl. ¶¶ 97-98; Citi Compl. ¶¶ 91-92. As discussed above, Defendants knew of servicer breaches, including document delivery related breaches, yet, Defendants accepted servicers certifications at face value. BNY Compl. ¶ 119; US Bank Compl. ¶ 98; Citi Compl. ¶ 92. Defendants seek to exonerate themselves by claiming they may rely on the correctness of certifications. Motion at 22. Be that as it may, the Trustees very plainly were not entitled to rely on certifications known to be false. *See* Heintz Decl. Ex. 1, CWALT PSA § 8.01(i) ("[T]he Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee . . . *which it believed in good faith to be genuine*."). *See e.g., Phoenix Light v. BNYM*, 2015 WL 5710645, at *3-5.

The complaints also are replete with allegations that the servicers for the loans in the Trusts breached their duties to prudently service loans and instead engaged in widespread, highly-publicized abuses. BNY Compl. ¶¶ 123-29; US Bank Compl. ¶¶ 99-104; Citi Compl. ¶¶ 95-100. Defendants cannot claim that the servicers did not engage in this misconduct. Instead,

---

contract may not assert that additional duties are not triggered because of their own non-performance of a condition precedent. *Knights of Columbus*, 2015 WL 4501196, at *4; *Commerce Bank*, 2015 WL 5770467, at *4-5. *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital Inc*., is similarly off point in that the court did not consider whether the trustee failed to provide a notice it was required to provide. No. 09-cv-6904, 2010 WL 3324705, at *8 (N.D. Ill. Aug. 20, 2010).

Defendants assert that the servicers' payment of billions of dollars in fines for this misconduct were not announced until after FDIC-R sold the Certificates (Motion at 22), but the servicing misconduct resulting in the fines took place for years before FDIC-R sold its Certificates, and servicing misconduct—not later fines—creates Events of Default.

Defendants ignore the SDNY Trustee Decisions and cite inapposite cases. In *Arrowgrass Master Fund Ltd. v. Bank of New York Mellon*, an unpublished decision partially transcribed by Westlaw, plaintiff alleged no affirmative duty (in contrast to the obligations here) for the trustee to provide notice or facts suggesting that the trustee knew the issuer had defaulted under the debt covenant. No. 651497/2010, 2012 WL 8700416, at *3, 9-10 (N.Y. Sup. Ct. Feb. 24, 2012). In *Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*, plaintiff failed to allege the occurrence of a default that could ripen into an Event of Default. No. 12-cv-7581 (HB), 2013 WL 1655990, at *4 (S.D.N.Y. Apr. 17, 2013). The *Millennium* court held that defendant's failure to provide notice of a contract amendment did not trigger an event of default and distinguished the facts of the case from RMBS cases with allegations similar to those of FDIC-R. *Millennium Partners, L.P. v. U.S. Bank Nat. Ass'n*, No. 12-cv-7581, 2015 WL 6454844, at *4 (S.D.N.Y. Oct. 26, 2015); *see also Royal Park v. Deutsche Bank*, 2016 WL 439020, at *8 (noting that *Millennium* is not instructive because it did not address the trustee's failure to give notice that would have triggered an event of default).[13]

---

[13] *Magten Asset Mgmt. Corp. v. Bank of New York*, 15 Misc. 3d 1132(A), 841 N.Y.S.2d 219 (Sup. Ct. May 8, 2007) is not relevant because the court held that the defendant's reporting of financial difficulties did not constitute an admission of insolvency necessary to trigger an event of default, not that the plaintiff failed to plead requisite awareness of the default. *Nacional Financiera SNC v. Bankers Trustee Co. Ltd.*, No. 121131/98, 2000 WL 36564710, at *7 (N.Y. Sup. Ct. Nov. 17, 2000) is similarly inapposite as the indenture in that case did not impose any notice obligations on the trustee.

**II.**     **FDIC-R Adequately Alleges Claims Under the Streit Act**

**A.**     **The Streit Act Applies to RMBS**

Defendants argue that the Streit Act does not apply because the Certificates are not

"mortgage investments" or direct investments in real estate. Motion at 24. Defendants are

incorrect. The term "mortgage investments" under the Streit Act includes "any and all shares and

interests . . . in an issue of bonds, notes or other evidence of indebtedness . . . held by more than

one person and secured by a mortgage or mortgages upon real property, or by a . . . trust

indenture or indentures or other evidence of interest in real property . . . ." N.Y. Real Prop. Law

§ 125. In applying the Streit Act to RMBS, *Royal Park v. HSBC* explained that such trusts

"directly hold mortgages on real property." 109 F. Supp. 3d at 611. Defendants' rights to

foreclose on those mortgages were similarly for the benefit of certificateholders and, thus, the

Certificates are "secured by a mortgage or mortgages." Lest there be any doubt that they are

"mortgage investments," the Certificates expressly identify themselves as "mortgage

investment[s]." Kane Decl. Ex. 3 (SAMI 2005-AR8 PSA at Exhibit A-1 ("This certificate is a

'regular interest' in a 'real estate mortgage investment conduit.'")).

Alternatively, Section 125(1) of the Act provides that "mortgage investments" also

include investments secured by a "trust indenture . . . or other evidence of interest in real

property." The PSAs expressly create a security interest in real property providing that "the

Depositor . . . does hereby grant to the Trustee a first priority perfected security interest in all of

the Depositor's right, title and interest in and to the Mortgage Loans." Kane Decl. Ex. 4

(HVMLT 2005-16 PSA § 2.02). Section 125(1) clearly contemplates that investments evidencing

an "interest in real property" are within the definition of "mortgage investments."

Further, the Trusts are not "collateral trusts" as Defendants contend. Motion at 24.

"Collateral trusts" are trusts holding security collateralizing independent debt—not certificates of

16

interest entitling holders to payments from underlying mortgages. *See* Black's Law Dictionary (10th Ed.) ("collateral trust bond: A bond representing a debt secured by the deposit of another security with a trustee."). Defendants contend the Streit Act is inapplicable to RMBS based solely on *Prudence Realization Corp. v. Atwell*, 264 A.D. 546, 35 N.Y.S.2d 1001 (1st Dep't 1942). *Prudence* involved a trust holding neither real estate nor mortgages, but rather only "collateral security consist[ing] of various kinds of personal property," such as cash, government obligations, bonds, and other securities. *Id*. at 546. The trust in *Prudence* fits squarely within the Black's Law Dictionary definition of "collateral trusts" because the trust held collateral that would only be drawn upon failure to pay the debt secured by the collateral. *See In re Prudence Co.,* 82 F.2d 755, 755 (2d Cir. 1936) (describing collateral trust). As *Royal Park v. HSBC* explains, "*Prudence Realization Corp.* has no bearing on the question, because the trust there held shares in *another entity*, which in turn held property, including mortgages," whereas RMBS trusts "hold mortgages on real property, and therefore the Streit Act applies." 109 F. Supp. 3d at 611 (emphasis in original); *see also* Kane Decl. Ex. 1 (*Royal Park Invs. SA/NV v. Bank of New York Mellon*) at 19 ("[C]onsistent with other decisions in this district, the Streit Act applies to the trusts at issue because the trust assets, the collateral securing the RMBS, consist solely of residential mortgages.").

### B.    The Streit Act Imposes Affirmative Duties on Trustees

Defendants contend that trustees may violate the Streit Act only by accepting an indenture that does not contain the provisions in Section 126 of the Act. Motion at 23. If Defendants' interpretation of Section 126 were correct, then they violated the section because

none of the PSAs contain all five provisions set forth in Section 126.[14] This alone is sufficient to sustain FDIC-R's Streit Act claims.

Moreover, Defendants ignore the broad, remedial purpose of the Streit Act, which is aimed at regulating trustees' *conduct*. Streit Act § 124 provides: "It is the purpose of the legislature, in enacting this article, to provide for the *regulation* and *supervision* of the appointment, creation, agreements, *acts, conduct, practices* and proceedings of trustees . . . ." (emphasis added). Section 130-h of the Act further states: "This article shall be construed liberally to effectuate its purpose." Section 126 governs both the terms of an indenture (or PSA) and how the trustee must "act," specifying minimum trustee duties, including the duty to exercise of prudent-person duties post-event of default. Given that the Streit Act was intended to supervise trustees' acts, conduct, and practices of trustees, and must be construed liberally to effectuate its purpose, the Act must be read to place affirmative duties on trustees to backstop the terms of the trust agreements in addition to regulating the content of those agreements.[15] Indeed, the mere inclusion of certain language in the PSAs cannot be sufficient to satisfy Section 126 if, as the Trustees argue, *other* PSA provisions insulate them from any duties required by Section 126.[16] Given the Trustees' arguments in this Motion, there is an open question whether these PSAs impose on *these Trustees* the unambiguous duties required by Section 126.[17]

---

[14] For example, none of the PSAs contain the provision in Section 126(3): "If the trustee can obtain the information without unreasonable effort or expense, to render annually to bondholders after the occurrence of a default, unless such default be previously cured, a summarized statement of income and expenditures in connection with the property."

[15] At a minimum, Section 126 is ambiguous as to whether it imposes affirmative duties on trustees in addition to regulating the content of trust agreements.

[16] For example, in its supplemental motion to dismiss, US Bank contends that "negating clauses" deprive FDIC-R of any benefits or rights under the PSAs at issue in the US Bank action.

[17] Defendants adopt the same unacceptable stance as the trustees who testified before the 1936 Streit Act committee that they had no "positive active duties which would have required full and ample protection for the bondholders," and that "the trustee can sit still and fold his hands if he chooses." Kane Decl. Ex. 5

The Streit Act's legislative history resolves any ambiguity by making clear that it was intended to impose affirmative duties on trustees. The Act was passed after a series of legislative inquiries "exposed evils and abuses which followed in the wake of the depression with respect to . . . improper and wasteful administration of properties by those pretending to act for bondholders." Kane Decl. Ex. 6 at 7. The purpose of the statute is to "afford genuine and not *feigned* protection" to investors and "*impose[] active duties upon a trustee* under trust indentures." *Id.* (emphasis added).

As explained in *Beck v. Manufacturers Hanover Trust Co.*:

[I]n light of the obvious injustice and futility countenanced by strict adherence to the common-law rule . . . the Legislature almost 60 years ago enacted Real Property Law § 126 requiring indenture trustees appointed in connection with "mortgage investments" in the case of an event of default (as such term is defined in such instrument), to exercise such of the rights and powers vested in the trustee by such instrument, and to use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

218 A.D.2d 1, 12-13, 632 N.Y.S.2d 520, 527-28 (1st Dep't 1995) (citations omitted). *Beck* further explained that the purpose of the Streit Act was to withhold from "indenture trustees the benefit of broad exculpatory provisions to excuse their failure to exercise those powers they possess pursuant to the indenture prudently in order to mitigate or obviate the consequences of default." *Id.* at 12. In *Groseclose v. Merchants Nat'l Bank*, the court relied on Section 126(2)(d) to order the trustee to commence a foreclosure. 71 Misc.2d 111, 113-14, 355 N.Y.S. 2d 652, 655-56 (N.Y. Sup. Ct. 1972). *Groseclose* described Section 126 as creating a "statutory duty" permitting the court to order that "the trustee is directed to take action to protect the rights of all

---

at 20. Like their Depression-era counterparts, Defendants assert that the PSAs provide an "investor driven remedial process," and that "Trustees are hired—and required—to perform only the few, largely ministerial and administrative tasks that are specifically defined and set forth in the PSAs." Motion at 1. These cavalier assertions treat the prudent person duty required by the Streit Act as a mere shibboleth.

the bondholders." *Id.* at 16.[18] The Trustees do not cite a single decision of the New York courts that calls these principles into question. Simply put, the Streit Act does not give trustees a free pass by merely including certain contract provisions in the governing agreements regardless of whether they actually comply with the duties those provisions impose.

In *Royal Park v. HSBC*, Judge Scheindlin came to the same conclusion, holding that the Streit Act "dictates that 'in the case of an event of default (as such term is defined in such instrument),' the indenture trustee is obligated to 'exercise such of the rights and powers vested in the trustee by such instrument, and to use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.'" 109 F. Supp. 3d at 599. FDIC-R respectfully submits that *Phoenix Light v. BNYM*, cited by Defendants, is not persuasive on this point, because the ruling did not take into account the New York state cases finding that the Streit Act imposed affirmative duties. 2015 WL 5710645, at *10-11.[19]

### C.      The Streit Act Provides a Private Right of Action

New York courts have consistently recognized a private right of action under the Streit Act. *See, e.g.*, *Groseclose*, 71 Misc.2d at 116 (trustee ordered to take actions to protect the rights of holders of mortgage-backed bonds consistent with the Act). Indeed, in *Harper*, the court

---

[18] S*ee also In re Colonial Trust Co.*, 189 Misc. 335, 340, 67 N.Y.S.2d 534, 539 (Sup. Ct. 1946) (Streit Act "made more definitive the authority and obligations of the indenture and voting trustees concerned with real property which constitutes the underlying security for mortgage investments."); *Harper v. Larchmont Yacht Club*, 38 N.Y.S.2d 505, 508-09 (Sup. Ct. 1942) (Section 126(1) creates an "absolute requirement . . . that the trustee act 'with due diligence, prudence and care.'")

[19] *Nat'l Credit Union Admin. Bd. v. U.S. Bank, Nat'l Ass'n*, No. 14-cv-09928, 2016 WL 796850, at *12-13 (S.D.N.Y. February 25, 2016) and *Royal Park v. BNYM* (Kane Decl. Ex. 1 at 18-21) recently followed the decision in *Phoenix Light v. BNYM* regarding the Streit Act, but FDIC-R respectfully submits that these decisions similarly misinterpreted New York state law.

expressly recognized that a plaintiff may sue under the Streit Act to compel the trustee's performance or sue for damages "or both." 38 N.Y.S.2d at 510.

Defendants try to slip the words "Attorney General" into the Act to claim that it, like the Martin Act, delegates enforcement to the New York Attorney General. Motion at 25. This is a mere sleight of hand. Whereas the Martin Act expressly authorizes "Investigations by the Attorney General" and references the "Attorney General" repeatedly, s*ee* Gen. Bus. Law § 352-1, 352-c, 353, 354, 359-g, the Streit Act nowhere contains the words "Attorney General." And, unlike the Martin Act, the Streit Act meets the three factor test in *Sheehy v. Big Flats Cmty. Day, Inc.*, for recognition of a private right of action. 73 N.Y.2d 629, 633 (1989).[20]

First, as Defendants do not dispute, Plaintiff falls precisely within the Act's class of intended beneficiaries, meeting the first *Sheehy* factor. The Streit Committee stated that its recommendations "necessarily seek to protect future mortgage bondholders." Kane Decl. Ex. 5 at 7. The Streit Act's legislative history shows it was intended to "aid[] and assist[] distressed investors in real estate investments," and prevent them from "being the victims of predatory interests who, in the guise of assisting such investors, may serve selfish ends." *Id.* at 5-6; *see also* Kane Decl. Ex. 6 at 7 (need to protect investors from those "pretending to act" on their behalf).

Second, allowing FDIC-R to file an action against Defendants advances the Act's legislative purpose, the second *Sheehy* factor, because the legislature clearly intended to create a deterrent for trustees who might fail to perform their proscribed duties. *See Negrin v. Norwest Mortg., Inc.*, 263 A.D.2d 39, 47, 700 N.Y.S.2d 184, 190 (2d Dep't 1999). [21]

---

[20] *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268 (1987) interprets the existence of a private right of action under the Martin Act, not under the Streit Act. Defendants fail to provide any authority supporting their analogy to the Martin Act.

[21] The Streit Committee found that trustees routinely exploited investors during times of economic growth similar to that in the years before the Financial Crisis. *See* Kane Decl. Ex. 6 at 8. The investigation uncovered the following misconduct: (i) concealment from bondholders of borrowers' inability to pay

<u>Third</u>, a private cause of action is consistent with the legislative scheme of the Streit Act, the third *Sheehy* factor, in that it would provide an enforcement mechanism to those affected by a trustee's violation of the Act. Moreover, the New York State Legislature has not provided for public enforcement of the Act by a designated regulatory body, and, as a result, a private right of action would not be inconsistent with a regulatory scheme.[22] *See Negrin*, 263 A.D.2d at 47-48. Accordingly, rather than impose an exclusive enforcement mechanism that limited the rights of investors, the legislature provided that the statute "shall be construed liberally to effectuate its purpose." N.Y. Real Prop. Law § 130-h. Where "there is no regulatory agency that would otherwise enforce compliance," an argument that a private right of action is inconsistent with a regulatory scheme "is specious." *Negrin*, 263 A.D.2d at 47. Moreover, contrary to Defendants' contention that the existence of a criminal penalty provision undermines a private right of action, Motion at 25, under New York law, a statute provision for a criminal penalty supports a private right of action particularly where no agency is expressly charged with enforcement. *General Teleradio, Inc. v. Manuti*, 284 A.D. 400, 405, 131 N.Y.S.2d 365, 369 (1st Dep't 1954) ("In this State it has been held that where there is a penal State statute which imposes a duty upon another, any person having a special interest in the performance thereof may sue for its breach.").[23]

---

back their loans; (ii) disbursement of misleading circulars and prospectuses regarding the mortgages underlying the collateral; (iii) falsification of current income and earnings of the property; and (iv) excessive loans based on inflated appraisals. Kane Decl. Ex. 7 at 8-9.

[22] That Section 124 of the Act refers to "regulation and supervision" is irrelevant because no provision of the Streit Act delegates a public agency to enforce the Act. Defendants do not cite to any precedent suggesting that the New York Attorney General has ever acted to enforce the Streit Act.

[23] *See also Buchwalter v. Dayton Mgmt. Corp.*, 139 Misc. 3d 297, 300, 526 N.Y.S.2d 900, 902 (Sup. Ct. 1988) (same); *Excavators Union Local 731 Welfare Fund v. Vanderbilt*, 100 Misc. 2d 1052, 1053, 420 N.Y.S.2d 439, 440 (Sup. Ct. 1979) ("a private right of action is implied from a statute which on its face provides only penal sanctions").

III.    **FDIC-R Has Standing to Assert Its Claims**

FDIC-R sold the Certificates pursuant to the Resecuritization Trust Agreement, which includes an express Delaware choice of law provision. *See*, *e.g.*, BNY Compl. ¶ 133. State and federal courts routinely enforce choice-of-law clauses. *See, e.g.*, *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) ("Absent fraud or violation of public policy, a court is to apply the law selected in the contract."). Therefore, Delaware rather than New York law governs the sale of the Certificates.[24]

Under § 8-302 of the Delaware UCC, "a purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer." 6 Del. Code § 8-302(a). "The phrase 'all rights in the security' means rights in the security itself as opposed to personal rights." *Schultz v. Ginsburg*, 965 A.2d 661, 667 n.12 (Del. 2009) (quoting *In re Sunstates Corp. S'holder Litig.*, No. Civ. A. 13284, 2001 WL 432447, at *3 (Del. Ch. Apr. 18, 2001)). Any claim that, like FDIC-R's claims, "'gives rise to a separate right to damages belonging to the individual'" is "personal." *Id.* Claims for damages caused by a breach of fiduciary duty are "personal." *In re Celera Corp. S'holder Litig.*, No. Civ. A. 6304-VCP, 2012 WL 1020471, at *14 n.83 (Del. Ch. Mar. 23, 2012) *rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012).

A court in this District held that a shareholder's breach of contract claims arising from the shareholders' status as third party beneficiaries of a contract with the corporation are also "personal." *Consol. Edison, Inc. v. Ne. Utils.*, 318 F. Supp. 2d 181, 192 (S.D.N.Y. 2004)

---

[24] Defendants suggest that New York law applies because the PSAs are governed by New York law. Motion at 8. But the PSAs have nothing to do with the Resecuritization.  Indeed, the "governing law clause in the indenture, however, has 'no relevance to the question whether the contracts of sale [of notes] . . . operated to assign certain rights of action.'" *Semi-Tech Litig., LLC v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 330 (S.D.N.Y. 2003) (citation omitted).

(considering provisions of New York UCC § 8-302 identical to Delaware UCC § 8-302), *rev'd on other grounds*, 426 F.3d 524 (2d Cir. 2005). Indeed, "nothing in the text of § 8-302(a), in its history or commentary, or in other provisions of the U.C.C. supports [the] proposition that 'rights in the security' include contract rights against third parties or that § 8–302(a) codifies a rule for the automatic transfer of such rights to subsequent purchasers." *Id.* [25]

Defendants' scant authority to the contrary merely states that certain claims for so called "charter violations" under the Delaware General Corporation Law, including those based on the shareholders' "right to vote, the right to compel payment of a contractually specified dividend, and the right to own and alienate shares," travel with stock. *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1049-51 (Del. Ch. 2015). The *Activision* court simply did not address claims by an RMBS certificateholder for damages arising out of a trustee's breaches of duties.[26] Moreover, the court was careful to note that a selling shareholder retains personal claims, and it described breach of contract claims as "quintessential examples of personal claims." *Id.* at 1056.

Only "the property rights associated with the shares" travel with the shares. *Id.* at 1050. As the Delaware Supreme Court put it, an equitable claim for violation of a corporate charter travels with stock shares only because "the injury is to the stock and not the holder." *Schultz,*

---

[25] Moreover, New York General Obligation Law § 13-107 provides for the automatic transfer to a bond purchaser of certain claims against a trustee as a special exception to New York's UCC § 8-302(a), which is identical to Delaware UCC § 8-302(a). Such an exception would be unnecessary if UCC § 8-302 provided for the automatic transfer of claims under an indenture or PSA.

[26] *Activision* involved shareholders' claims against Vivendi which, prior to a restructuring, controlled Activision, for breaching its fiduciary duties by diluting shareholders' holdings and modifying their voting rights. 124 A.3d at 1030-31, 1035-36, 1052. Contrary to Defendants' characterization of the case, the court did not hold that all claims deriving from the challenged transaction were transferred to stock buyers. Rather, the court held that lead plaintiff's claims were either corporate claims or non-personal voting rights and dilution claims, and that the objector had not established that any personal claims he might have were worth anything. *Id.* 1050-52, 1055-56, 1058.

965 A.2d at 667; *see also id.* at 668-69 (holding that settlement did not impermissibly provide monetary damages to subsequent purchases because relief granted was rescissory damages, which are equitable); *Activision,* 124 A.3d at 1054-55 (noting that the remedy for a non-personal "economic dilution" claim that traveled with the stock was disgorgement or other equitable remedies).  In contrast, FDIC-R's claims here are for legal damages to redress breaches of duties third party trustees (*i.e.,* Defendants) owed to FDIC-R. "A trustee's liability for a breach of trust is personal in character with all the consequences and incidents of personal liability." *See, e.g.*, *Hogg v. Walker*, No. Civ. A. 9090, 1993 WL 263504, at *1 (Del. Ch. June 30, 1993) (citation and quotation omitted). "Since the liability is a personal one, it is not part of the corpus of the trust." *Id.*

In brief, FDIC-R has standing to assert its claims because none has anything to do with violation of a corporate charter, none seeks damages against the corpus of any trust, and all instead seek personal damages caused by the Trustees' violations of their duties under the PSAs and Streit Act.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.[27]

Dated: March 8, 2016

By: /s/ *David H. Wollmuth*

David H. Wollmuth
Steven S. Fitzgerald
Ryan A. Kane
Robert T. Franciscovich
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110

---

[27] Plaintiff acknowledges that the Second Circuit has held that the TIA does not apply to RMBS similar to the RMBS here, *Policemen's/BNY Appeal*, 775 F.3d at 169, but includes a claim under the TIA to the extent there are any further developments in the law and for purposes of preserving any rights on appeal.

25

Phone: (212) 382-3300
Fax: (212) 382-0050
dwollmuth@wmd-law.com
sfitzgerald@wmd-law.com
rkane@wmd-law.com
rfranciscovich@wmd-law.com

***Attorneys for FDIC as Receiver for Guaranty Bank***